■ SHIRLEY HARRISON, Appellant, v NEW YORK CITY TRANSIT AUTHORITY, Respondent. [941 NYS2d 622]—

Order, Supreme Court, New York County (Michael D. Stallman, J.), entered May 5, 2011, which granted defendant's motion for summary judgment dismissing the complaint, unanimously affirmed, without costs.

Plaintiff alleges that she slipped and fell back as she approached the turnstile in the subway station at 125th Street and Lexington Avenue on her way to work at about 9 A.M. on a weekday. At a deposition, she testified as follows:

"Q. Do you know what caused you to slip?

"A. Well, as I was being helped up, I saw MetroCards and debris on the floor?

"Q. Did you see the MetroCards and debris on the floor before you slipped?

"A. No I did not.

"Q. Did one or both of your feet come into contact with anything when you slipped?

"A. I am not sure. It happened so fast. As I was being helped up, I looked and I saw wrappers and MetroCards on the floor."

In an affidavit prepared later, plaintiff stated, "When I was helped up, I looked at the floor to see what caused me to slip. There, in front of and underneath the turnstile, was a thick pile

of spent, discarded MetroCards, spread out in different directions, together with some package wrappings." She said she gave the MetroCards as a reason for her accident.

Defendant's witness, Sandra McLaurin, the New York City Transit Authority employee who had been responsible for cleaning the 125th Street Station for 10 years, described her work routine based on an established schedule. She arrived at 6 A.M. and proceeded to sweep clean the stairs and mezzanine where the turnstiles were located. She then cleaned other parts of the station including the restrooms, finishing at about 10 A.M. She repeated the routine starting at 10:30 A.M., sweeping the MetroCards and debris that accumulated during the rush hour. The second sweeping took 15 to 20 minutes longer because of an even greater amount of debris. Trash receptacles were placed near the MetroCard dispensing machine and inside the station, through the turnstiles. McLaurin remembered cleaning the station completely pursuant to her usual routine on the day of the accident, as well as having been called to fill out the report after the accident occurred.

The motion court granted summary judgment to defendant dismissing the claim on the ground that plaintiff failed to raise a triable issue of fact as to notice. Plaintiff claims that she established that defendant had constructive notice of a recurrent slippery condition, namely the presence of debris and discarded MetroCards on the subway platform during the heart of rush hour. However, her claim must be dismissed for three reasons.

First, plaintiff only speculated as to what caused her fall. At best, after she fell, she looked around and saw MetroCards and wrappers on the floor near the turnstile where she had fallen. (*See Edwards v New York City Tr. Auth.*, 72 AD3d 534, 535 [2010] ["Plaintiff's inability to identify the 'hard' object on the steps that caused her to fall, along with the deposition testimony of defendants' bus driver that he inspected the steps both at the start of his shift and shortly after the accident . . . established defendants' prima facie entitlement to summary judgment"]; *Acunia v New York City Dept. of Educ.*, 68 AD3d 631 [2009] [speculation as to cause of fall was insufficient].)

Second, even if it were a MetroCard that plaintiff slipped on, it could have been dropped a minute before. The fact that subway users dropped cards near turnstiles does not constitute notice of the particular cause of her fall. In *Gordon v American Museum of Natural History* (67 NY2d 836, 838 [1986]) involving paper on the museum steps, the Court of Appeals specifically stated, "the piece of paper that caused plaintiff's fall could have

been deposited there only minutes or seconds before the accident and any other conclusion would be pure speculation" (*see also Torres v New York City Hous. Auth.*, 85 AD3d 469, 469-470 [2011] ["Evidence of a general awareness of debris and spills in the stairway does not require a finding that defendant is deemed to have notice of the condition that caused plaintiff to fall"]).

We have held that evidence of an unremedied condition that recurred and caused prior accidents because it was not addressed could constitute constructive notice (*Modzelewska v City of New York*, 31 AD3d 314 [2006] [slippery substance causing earlier fall]; *Talavera v New York City Tr. Auth.*, 41 AD3d 135 [2007] [leaky pipe]). However, that was not the case here. In those cases, the identical defect existed for a long period of time or recurred because of a failure to remedy a longstanding de physical defect.

While strewn MetroCards constitute a recurrent condition, defendant demonstrated that it had a rational means of dealing with the problem. The court cannot impose a duty upon a municipal authority to alter its cleaning schedule or hire additional cleaners without a showing that the established scheduled is manifestly unreasonable. Where as here, a reasonable cleaning routine was established and followed, liability cannot be imposed (*see Torres*, 85 AD3d 469; *Raghu v New York City Hous. Auth.*, 72 AD3d 480 [2010] [evidence that janitorial staff swept stairway prior to plaintiffs' falls was sufficient to grant summary judgment to defendants]; *Vilomar v 490 E. 181st St. Hous. Dev. Fund Corp Corp.*, 50 AD3d 469 [2008] [evidence that stairway was cleaned twice a day warranted summary judgment]). The photographs of the station taken by and furnished by plaintiff demonstrate that the platform was clean at the particular time they were taken. Moreover, even if additional cleaners were hired, or more frequent sweeping occurred, maintaining a litter-free station at rush hour would be impossible. The fact that subway users dropped cards near turnstiles does not constitute notice of the particular cause of her fall. Concur—Saxe, J.P., Sweeny, Freedman and Manzanet-Daniels, JJ.